IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SELMA DIVISION

KENNETH SCOTT,

   PLAINTIFF,

V.

SIMONDS INTERNATIONAL, LLC,

   DEFENDANT.

CIVIL ACTION NO.:

JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e et seq. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII) and 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title VII providing for injunctive and other relief against race discrimination.

2. Plaintiff timely filed his charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

### II. PARTIES

3. Plaintiff, Kenneth Scott (hereinafter "Plaintiff"), is a citizen of the United States, and a resident of Camden, Wilcox County, Alabama. Plaintiff was formerly employed by Defendant.

4. Defendant, Simonds International, LLC (hereinafter "Defendant"), is registered and doing business in the State of Alabama and is an entity subject to suit under Title VII. Defendant employs at least fifteen (15) persons.

### III. STATEMENT OF THE FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6. Plaintiff is a person of African ancestry (colloquially known as "black").

7. Defendant hired Plaintiff on or about June 26, 2000.

8. Defendant terminated Plaintiff's employment on October 13, 2016.

9. Defendant employs Bryan Welch as its Plant Manager.

10. Welch is a Caucasian male (colloquially known as "white").

11. On October 10, 2016, Plaintiff witnessed Defendant's Plant Manager, Bryan Welch, uttering racial slurs on Defendant's production floor.

12. Welch referred to members of Plaintiff's team as "knuckle draggers."

13. The following day, Plaintiff spoke with Welch about the usage of his racial slur.

14. Welch became enraged and commenced screaming and throwing his books on the ground.

15. Welch then gathered Plaintiff's co-workers for a meeting to discuss his language.

16. Plaintiff attempted to attend the meeting, but Welch told Plaintiff that he could not attend.

17. Plaintiff persisted in trying to attend the meeting that Welch called to discuss his language in the workplace.

18. In response, Welch threatened to suspend Plaintiff's employment.

19. Welch then allowed Plaintiff to attend the meeting, but he was not allowed to speak.

20. Welch then asked those in attendance at the meeting if they thought that his use of the racial slur was offensive.

21. When the employees did not respond in the affirmative, Welch ended the meeting.

22. Immediately after the meeting, Welch told Plaintiff that he never wanted to see Plaintiff "in [his] plant again" and terminated Plaintiff's employment.

IV. **COUNT ONE – TITLE VII – RACE –RETALIATION.**

23. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 22 above.

24. On October 10, 2016, Plaintiff witnessed Defendant's Plant Manager, Bryan Welch, uttering racial slurs on Defendant's production floor.

25. Welch referred to members of Plaintiff's team as "knuckle draggers."

26. The following day, Plaintiff spoke with Welch about the usage of his racial slur.

27. Plaintiff's complaint to Welch about his use of the term "knuckle dragger" is objectively reasonable as it is a '[s]tereotypical and racially prejudice term referring to people of African descent" and [s]tems from the idea of these people having long, monkey like arms." See https://www.urbandictionary.com/define.php?term=knuckle%20dragger&page=3.

28. Plaintiff's complaint to Welch about his use of the term "knuckle dragger" is objectively reasonable as it is "often believed that black people have longer arms than other races and therefore their knuckles would drag." See http://www.rsdb.org/slur/knuckle-dragger.

29. Welch became enraged and commenced screaming and throwing his books on the ground.

30. Welch then gathered Plaintiff's co-workers for a meeting to discuss his language.

31. Plaintiff attempted to attend the meeting, but Welch told Plaintiff that he could not attend.

32. Plaintiff persisted in trying to attend the meeting that Welch called to discuss his language in the workplace.

33. In response, Welch threatened to suspend Plaintiff's employment.

34. Welch then allowed Plaintiff to attend the meeting, but stated that Plaintiff was not allowed to speak.

35. Welch then asked the gathering if they thought his use of the racial slur was offensive.

36. When the employees did not respond in the affirmative, Welch ended the meeting.

37. Immediately after the meeting, Welch told Plaintiff that he never wanted to see Plaintiff "in [his] plant again" and terminated Plaintiff's employment.

38. Defendant terminated Plaintiff's employment on October 13, 2016.

39. In violation of Title VII, Defendant would not have terminated Plaintiff's employment, but for Plaintiff's complaint of Welch's use of racially discriminatory language in the workplace

40. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

V.   COUNT TWO – 42 U.S.C. § 1981 - RETALIATION

41. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 40 above.

42. On October 10, 2016, Plaintiff witnessed Defendant's Plant Manager, Bryan Welch, uttering racial slurs on Defendant's production floor.

43. Welch referred to members of Plaintiff's team as "knuckle draggers."

44. The following day, Plaintiff spoke with Welch about the usage of his racial slur.

45. Plaintiff's complaint to Welch about his use of the term "knuckle dragger" is objectively reasonable as it is a '[s]tereotypical and racially prejudice term referring to people of African descent" and [s]tems from the idea of these people having long, monkey like arms." See https://www.urbandictionary.com/define.php?term=knuckle%20dragger&page=3.

46. Plaintiff's complaint to Welch about his use of the term "knuckle dragger" is objectively reasonable as it is "often believed that black people have longer arms than other races and therefore their knuckles would drag." See http://www.rsdb.org/slur/knuckle-dragger.

47. Welch became enraged and commenced screaming and throwing his books on the ground.

48. Welch then gathered Plaintiff's co-workers for a meeting to discuss his language.

49. Plaintiff attempted to attend the meeting, but Welch told Plaintiff that he could not attend.

50. Plaintiff persisted in trying to attend the meeting that Welch called to discuss his language in the workplace.

51. In response, Welch threatened to suspend Plaintiff's employment.

52. Welch then allowed Plaintiff to attend the meeting, but stated that Plaintiff was not allowed to speak.

53. Welch then asked the gathering if they thought his use of the racial slur was offensive.

54. When the employees did not respond in the affirmative, Welch ended the meeting.

55. Immediately after the meeting, Welch told Plaintiff that he never wanted to see Plaintiff "in [his] plant again" and terminated Plaintiff's employment.

56. Defendant terminated Plaintiff's employment on October 13, 2016.

57. In violation 42 U.S.C. § 1981, Defendant would not have terminated Plaintiff's employment, but for Plaintiff's complaint of Welch's use of racially discriminatory language in the workplace

58. As a result of Defendant's violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

  A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by Title VII and 42 U.S.C. § 1981.

  B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant's request from continuing to violate Title VII and 42 U.S.C. § 1981.

  C. Enter an Order requiring Defendant to make Plaintiff whole by awarding her front-pay, back pay (plus interest) compensatory damages, punitive damages, special damages, and/or nominal damages, injunctive and declaratory relief, and benefits.

  D. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

_____
Allen D. Arnold

_____
Kira Fonteneau

OF COUNSEL:
FONTENEAU & ARNOLD, LLC
A Member of Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, AL 35205


T: 205.252.1550 F: 205.502.4476

**PLEASE SERVE DEFENDANT(S) AT:**

SIMONDS INTERNATIONAL, LLC
c/o National Registered Agents, Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

_____